## NATIONAL ELECTRIC TICKET REGIS-TER CO v AUTOMATIC TICKET REGISTER CORPORATION.

(Circuit Court of Appeals, Second Circuit. November 15, 1926.)

No. 53.

1. Patents ⬅61.

What patentee knew, and put into his earlier application, he cannot assert to be new, when he files later application.

2. Patents ⬅323.

Sullivan patent, No. 1,145,818, claims 14, 20, 30, and 67, for ticket-issuing machine, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the National Electric Ticket Register Company against the Automatic Ticket Register Corporation. Decree for defendant, and plaintiff appeals. Affirmed.

Suit is upon claims 14, 20, 30, and 67 of patent 1,145,818, issued July 6, 1915, to William L. Sullivan, upon an application filed October 26, 1914.

The patent is for a "ticket-issuing machine," and more particularly a machine of the type "in which a continuous ticket strip is fed forwardly and severed into lengths containing one or a plurality of tickets, the length of the severed portions of the ticket strip being governed by the operator, who actuates a certain key or controlling device when it is desired to issue one ticket, a different key or device when it is desired to issue two tickets," etc.

The patentee states that the object of his *present* invention "is to provide a machine * * * in which the various elements of the machine are operated positively in both directions, thus eliminating various defects that are apt to develop when a spring is employed in a machine of this type for moving the elements of the machine in one direction, either forwarding or to restore them to normal position.".

The claims in suit are of the same general nature; all describe a combination in a ticket-issuing machine. The twentieth claim goes perhaps into the greater detail and is as follows:

"20. A ticket-issuing machine, comprising a ticket-issuing mechanism, a driving element for actuating said mechanism and restoring it, an electric motor for operating said driving element, a plurality of manually operated controlling devices for governing the number of tickets issued at each cycle of operations of the machine, a switch for governing the motor, and means governed by said ticket-con-trolling devices for closing said switch and causing it to remain closed up to a certain period in the cycle of operations of the machine."

When the applicant referred to his *present* invention, he evidently had in mind another invention of his own for a "ticket-issuing machine," application for which was filed July 29, 1912, but the patent did not issue until July 8, 1919 (No. 1,308,966).

After full hearing the court below dismissed the bill for lack of invention; plaintiff took this appeal.

Cornwall, Bedell & Janus and Rodney Bedell, all of St. Louis, Mo., and Fraser, Myers & Manley, of New York City, for appellant.

E. W. Marshall, of New York City, for appellee.

Before HOUGH, MANTON, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The patentee's view of his own achievement is concisely stated in the brief filed thus: "It may be a simple thing to positively actuate a single mechanism in both directions; it is quite a different matter to co-ordinate a number of mechanisms having movements differing from each other, and some of which have different degrees of movement at different times, and to do so without the use of springs."

This agrees with the specification in asserting as the core of invention the positive actuation of the ticket-ejecting mechanism.

Since almost all patents (and this one is no exception to the rule) consist in taking the "last step that counts," it is always necessary to ascertain where the inventor was and what the art was when he began to take his step.

The art of constructing machines to contain and feed out strip tickets was not new when this application was filed, October 26, 1914, and there is nothing to carry the date of invention back of that day.

Particularly there existed Sullivan's own machine, described in an application filed by him three years before, and, as the evidence shows, made and put on the market. There was also a machine of which he was co-inventor, contrived for the same purpose but actuated by a treadle instead of electricity. Meier and Sullivan, No. 1,039,167.

Appellant urges that the treadle machine is too remote to be considered, and that the invention revealed in Sullivan's application of 1912 was copending with that for the patent in suit, and cannot therefore be considered prior art under numerous decisions in this circuit. While we do not consider those cas-

es relevant here, it is to be noted that the latest and ruling decision on that subject is Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. ——, and anything in our decisions contrary thereto must be disregarded.

[1] But the point of this case is, not that the two Sullivan patents were copending, but that what the patentee knew, and put into his earlier application, he could not assert to be new when he filed his later one. His second step could only begin where his first stopped. His knowledge is not imputed to him by any proceeding in the Patent Office; he acquired it by the efforts of his own mind. Harvey Hubbell v. General Electric Co. (C. C. A.) 267 F. 564.

With this actual knowledge, and under the burden laid by the law of knowing the art as if a person skilled therein, this patentee propounded the claims in suit, which are all for combinations in a "ticket-issuing machine" of elements stated in the most general terms, nearly all terms of function. In the claim quoted, *any* driver capable of both actuating and restraining *any* ticket-issuing mechanism, *any* electric motor, and a plurality of *any* manually operated devices for controlling the ticket issue, will satisfy the claim.

[2]. Therefore the inquiry is this: Since Sullivan knew what he had done before, and was bound to know the multiplicity of positive actuations known in allied arts, and shown in a ticket machine in Trippensee, No. 973,896, did he display more than the skill of a machinist in abandoning the one-way spring actuation of his own earlier device, and substituting a positive two-way drive? We think not, and on this point have nothing to add to the remarks of the court below.

It may be true, though we fail to see it, that the manually operated positive action of this machine contains some new and clever details of mechanism, per se worthy of patent protection, but, if so, the claims in suit do not cover.

Decree affirmed, with costs.