## JUDELSON v. HILL LAUNDRY EQUIPMENT CO., Inc.

District Court, E. D. New York. March 31, 1927.

**1. Patents ⊂⇒328—1,513,594, for laundry drier, held valid and infringed.**

Judelson patent, No. 1,513,594, for laundry drier, consisting of new combination of old elements to produce more compact drier, *held* valid and infringed.

**2. Patents ⊂⇒26(2)—New combination of old elements, producing new and useful result, is "discovery" or "invention," which will be protected by patent.**

New combination of old elements, producing useful result, constitutes "discovery" or "invention," which will be protected by patent, unless each element functions in same way, and combination is simply aggregation of old elements producing no new results.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Discovery; Invention.]

In Equity. Patent infringement suit by Julius Judelson against the Hill Laundry Equipment Company, Inc. Decree for plaintiff.

Morris Kirschstein, of New York City, for plaintiff.

O. Ellery Edwards, of New York City, for defendant.

INCH, District Judge. This is a suit brought by plaintiff to prevent infringement by defendant of a United States patent issued to plaintiff on October 28, 1924, No. 1,513,594. The defendant, as its name indicates, is a concern doing the business of mak-

ing and selling laundry driers, while the real plaintiff, is a concern likewise making and selling drying apparatus, the Domestic Laundry Equipment Company, plaintiff's licensee. Between these two concerns there is competition.

The case presents the not unusual situation of a new patented apparatus appearing on the market, competition becoming sharp because of its commercial success and because another concern is making and selling similar apparatus; the latter being sued for infringement and proceeding to contest the validity of the patent—that is, the former's right to thus exclusively control the market. At least that is the way this case appears to me.

The construction of the defendant's offending drier is substantially the same as that called for by plaintiff's patent. This sort of drier, since it came upon the market, has been and is being successfully sold to private homes, apartment houses, golf clubs, etc. The defendant, prior to its entry into the market with what is claimed by plaintiff to be his invention, had and still has its own form of drier, which, so far as I can see, was and is successful where it can be used.

Plaintiff's new apparatus takes up a great deal less space, and possibly accomplishes its purpose, in this compact form, better, than the aforesaid larger and more cumbersome apparatus of defendant, and, as space is valuable in apartments, hotels, and clubs, the defendant undoubtedly found that it was falling behind in competition as to such prospects and lucrative field, with the result that it proceeded to introduce its own alleged new drier for such places. Defendant claims it has a right to do this, for the reason that plaintiff did not invent anything when he put on the market, through his said licensee, the Judelson Drier.

[1] The question, therefore, presented for determination, is whether or not the Judelson patent is valid. Julius Judelson applied for his patent April 18, 1921. He experienced considerable difficulty in the Patent Office, but finally, on October 28, 1924, a patent was issued, No. 1,513,594.

Among the objects of this invention, which is a useful and commercial one, are to provide a drier with practical heat-drying apparatus, in which the heat vehicle does not come in contact with the clothes or materials to be dried, and yet without discoloration efficiently and effectively dries them; also to provide a practical and effective means by which the moisture drawn from the wet clothes is readily taken out from the drying chamber simultaneously with the hot air; and finally to provide the above results by comparatively inexpensive apparatus and economical means for producing the heat.

[2] As one reads Judelson's patent, it becomes evident that it is a combination patent. Many of the elements of the combination are old. Driers using gas or coal, cabinets into which the heat is poured, means of directing a heat vehicle, such as baffles and other similar devices, were each known, and have been known for some time, in the art. The patent of Judelson may be upheld, if it is found to be a new combination of old elements producing a useful result. Zip v. Pusch (C. C. A.) 2 F.(2d) 828.

It would not be sufficient to constitute invention to show a mere aggregation, or that Judelson's apparatus was smaller or cheaper, or any other "talking point" used so often by salesmen. These are matters of trade. We are dealing here solely with a "discovery," if any, having the dignity of invention. It is a "discovery" or "invention," however slight, that is protected by a patent.

Judelson's patent has seven claims, the first six of which constitute the causes of action in his complaint in this suit. These six claims are as follows:

"1. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, means at one end of the chamber for exhausting the heat vehicle therefrom, and means in said chamber for retarding the circulation of the heat vehicle therethrough.

"2. In a drier, a drying cabinet for the materials to be dried, a heating for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, means at one end of the chamber for exhausting the heat vehicle therefrom and means located in said chamber for directing the heat vehicle to the end of said chamber opposite the exhaust end.

"3. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, a plurality of baffles in

said chamber, and an exhaust flue extending, therefrom.

"4. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, a plurality of baffles in said chamber, one of said baffles located adjacent said opening and adapted to direct the heat vehicle to one end of the chamber.

"5. In a heater, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater whereby the heat vehicle passes from the latter into the chamber, means at one end of the chamber for exhausting the heat vehicle therefrom, and means in connection with said exhausting means for abstracting the moisture evaporated from the materials into the cabinet.

"6. In a drier, a drying cabinet for the materials to be dried, a heater for imparting heat to a heat vehicle, a heating chamber located in said cabinet, said chamber having an opening communicating with said heater, whereby the heat vehicle passes from the latter into the chamber, and means for simultaneously exhausting the heat vehicle from the chamber and the moisture from the cabinet evaporated from said materials."

Laundry driers, so far as gas-burning driers are concerned, came largely into use about eight years ago. Previous to that there have been coal-burning and steam-heating driers, as to which the cost and inconvenience was considerable, and, particularly where small equipment was indicated, they were inefficient. Both defendant and plaintiff's licensee, prior to the Judelson apparatus, had been selling driers of different types. It is not necessary to go over the various disadvantages which it is claimed caused complaints, chief of which was that the garments to be dried discolored somewhat, and that the apparatus consumed so much gas as to make it too expensive.

I would not be surprised but that both of these laundry companies were therefore seeking some way out of this trouble. At any rate, it appears that plaintiff's licensee was endeavoring to find something new to meet these complaints, and Judelson, who was their employee, skilled in the art, was appealed to. He had been in the drier business for many years, and had taken out a number of patents on driers. Flues composed of "tubes," a means of indirect heat, were well known. There is testimony that such method of carrying heat had proven inefficient in apparatus, which must be compact and occupy smaller space than those available in larger laundries and similar places. The difficulty was to find a means in a smaller apparatus, not only of supplying the heat and extracting the moisture automatically without discoloration from the ever-present fumes from the gas, but also to effectively dry the clothes within a reasonable time.

This presented a real problem in the art. Judelson made a number of attempts. Finally he discovered the combination described in his patent and shown by the drawings. This is a rectangular box or heating chamber, extending substantially the full depth of the drying cabinet. This box is substantially completely closed, with an exception of an opening which communicated with the gas burners and at the rear end an exhaust flue. At the opening aforesaid, where the heat from the gas entered, he placed a baffle, so positioned as to direct the entering heat to the extreme end of the box, opposite this exhaust flue. He then placed additional baffles in this box, so positioned that this heat, when it came from this extreme end, would be caused to circulate thoroughly through the box. This arrangement of baffles was found to cause the maximum amount of heat and break up the gases, in which the heat was carried, so as to abstract the heat in maximum quantity. This idea and arrangement of a box with baffles was new in the art. It was a scientific arrangement of old elements, which produced a new result. It was not alone the result of the skill of a mechanic; it was the result of Judelson's thought and experiment, and based on scientific study by him of not only what was needed, but how to commercially accomplish the result.

Judelson also went a step further, for getting the maximum amount of heat properly distributed was but a portion of the problem. An equally important portion was to find the means by which this heat could be economically and efficiently used to dry the wet clothes in the drying cabinet above this box. This Judelson finally discovered by arranging his apparatus so that the suction caused by this flow of the gases through the said exhaust flue drew the moisture from the cabinet into a vent, and through openings communicating with the flue, so that a noninterrupted exhaust of the moisture in the cabinet took place. He obtained a continuous supply of heat, a con-

tinuous exhaust of the moisture of the cabinet, and a continuous circulation of fresh air in the drying compartment.

The expert, Mr. Little, who appears to be thoroughly conversant with the subject and highly specialized in it, testified that this Judelson heater was entirely new in the art, and economical, and designed to get the maximum heat. The Judelson heater also met with immediate commercial success. A further advantage, although possibly not invention, in this Judelson heater, is that it takes up a small amount of space, while at the same time doing its work efficiently. This undoubtedly has been of considerable advantage in the sale of the apparatus.

Even the defendant would seem to agree that the Judelson heater, or its own, which, as I have said, is substantially the same, is best adapted for the demand requiring economy of space. There is no claim made by Judelson that defendant's larger apparatus infringes. What plaintiff objects to is the unauthorized use by defendant of his invention.

There are some minor differences between defendant's apparatus and that of plaintiff, such as the method of exhausting the heat from the chamber, etc., but none in principle, and Mr. Little was of the opinion that defendant's method was not as good as that of plaintiff's in this regard.

Defendant offered in evidence examples of the prior art, but it seems to me that its argument is addressed to various elements in the combination, rather than the new result obtained by the use of inventive faculty, from a rearrangement, of what in themselves, considered as separate elements, may be old. It seems to me that in addition to this new result from old elements which might be sufficient there has been a new element introduced, in this method of Judelson's, as to exhausting the heat. Exhibits, showing baffles, pipes, etc., do not meet this question raised by the Judelson construction.

The nearest thing to Judelson was the patent of Manning and Easterly, applied for February 3, 1903, and issued June 23, 1903. This patent was considered carefully by the Patent Office, and caused a redrawing of the original application of Judelson. The Manning and Easterly apparatus had no baffles, nor did it disclose the idea of Judelson's simultaneous exhaust, which seems to me; as I have said, to be a new element. The use of tubes, through which heated gases pass, with an unbroken core, comes short in my opinion of producing an arrangement such as Judelson's. His is arranged to break up this heated gas, thus causing it to give up a heat maximum.

I cannot agree that a number of tubes, side by side, are the same thing as Judelson's box or chamber, nor do I think, considering Judelson's invention, that the tubes in defendant's structure (prior to Judelson's patent) are the equivalent of baffles. They are two separate things. While it might be conceived that in some other case, on different facts, a tube and a baffle would be found to accomplish the same result, yet it is evident, in the case before me, that here this is not so. What Judelson sought to accomplish he could not get from "tubes." They were no use in his apparatus. He did get results from "baffles." It seems to me, therefore, that the Judelson patent shows invention. It has simplicity, utility, economy, and has met with commercial success; more than this, it has been practically copied by defendant.

Retarding the flow of a heating gas is different from directing that gas, in such a manner, as to scientifically draw from it the maximum of heat, at the same time uniformly distributing it, in a heating chamber. The question of equivalency is oftentimes a narrow one, but the nature of the invention has a material effect on a decision regarding what is an equivalent, and consideration must be given to the particular art involved. General Electric v. Dunkirk (C. C. A.) 211 F. 657.

The defendant asserts that clothes driers are old, and lays great stress on its old apparatus being efficient in larger spaces. As to this there is no dispute. This does not, however, satisfactorily explain why defendant has not continued to compete with plaintiff with this drier, but has seen fit to put on the market this additional apparatus, claimed by Judelson to be substantially his structure, where economy of space is designated by architects or required by the circumstances.

Tubes were admittedly found by defendant to be unsatisfactory where smaller driers are indicated, although entirely satisfactory in larger structures. The defendant therefore says that "tubes" and "baffles" are the same or equivalents of each other. Hot gases, of course, may be passed through "tubes" and the heat extracted by radiation, but in all such cases we have the "core" of heat surrounded by gas, while in a structure with "baffle" plates such "core" is broken up, and the heat more directly obtained and uniformly distributed. If tubes are the same, and as good as baffles, I do not understand why defendant should discard tubes in its offending apparatus and substitute baffles. This choice be-

tween tubes and baffles in a drier seems to me to be much more than a mechanical choice which any one skilled in the art could and would adopt. It has rather the result of experiment and scientific research, which, however, when once accomplished, and the result shown, can be easily considered, by those wishing to avoid a patent, to be a purely mechanical choice.

The defendant further contends that deflecting hot gas currents through a passage, so that the heat may be extracted, is an old idea, and that whether it is done by tubes or by baffles, both of which elements are old in themselves, makes no difference, and is not invention, and that Judelson's invention, as disclosed by his patent, is inoperative, because the exhaust flue will not function as disclosed and that this required the introduction of what is termed to be an "inspirator." I think Judelson's apparatus is substantially disclosed in his patent.

Relying to some extent on the well-known case of National Electric Ticket Register v. Automatic Ticket Register (C. C. A.) 15 F. (2d) 257, petition for writ denied 47 S. Ct. 477, 71 L. Ed. ——, defendant asserts that there is no invention by Judelson in substituting his box with baffles for a collection of tubes; that this is simply substituting one well-known form of heat radiation for one equally well known; that the function of the apparatus remains unchanged, and the result is the same.

However, I believe that this idea of Judelson is a new combination discovered by Judelson, by which gas heat is for the first time efficiently treated in a small compact drier, causing a maximum of heat and even distribution of same, with economy of space and upkeep, while at the same time efficiently extracting the moisture, without discoloration or odor, by means of convected air currents. This was the result of more than mechanical skill. It was the adaptation of various elements, old in themselves, but in a new combination, in which these old elements function differently and produce a new result.

Of course, the ultimate object of all driers is to dry wet clothes; but the problem which apparently remained unsolved until Judelson's apparatus came on the market was to find a drier that could operate in a small space efficiently in apartments, golf clubs, and other similar places where the old form of drier, however efficient, could not be used. Judelson discarded tubes and used baffles and he placed these baffles in a heating chamber box. This was new and it worked. It became commercially successful. Defendant thereupon discarded tubes and substituted baffles.

The demand and the money reward for a discovery meeting the demand had been present for some time. Just why, if this was merely a mechanical substitution, available certainly to defendant as well as to plaintiff, defendant should wait until what has been said to be the new idea of Judelson came upon the market, is not plain. Just because it is new the court, however, should be and has been cautious in imposing the retarding effect, on an important business, of injunctions, unless an invention is to be protected, and the inventor thereby given his limited monopoly as a reward for the brain work and experiments, and disappointments in experiments, in finally accomplishing a useful and novel step of progress in the art.

There is no idea asserted by plaintiff of interfering with defendant's business in selling and installing its other drier or driers in which it has been successfully dealing for many years, or with defendant's right to bring out what may hereafter be found to be a still different and new combination of old elements, producing a still different or new result as to heat applications, extractions of moisture, etc. What plaintiff claims is that, as he discovered this particular invention, which has been substantially copied and used by defendant, and as he duly received a patent, after examination in the Patent Office of conflicting patents, he, as such inventor, should be protected.

This seems right to me. Where a patent has been substantially copied, the court should not be too astute to upset that patent, unless it is fairly plain that each of the elements of the combination are old, function in the same way, and the alleged combination is simply an aggregation of such old elements, producing no new result, except that of cheapness of construction, or in size, and is one which any skilled machinist would readily see and use, without experimenting and exercising the inventive faculty, necessarily present and the basis of a valid patent.

Decree for plaintiff as to claims 3 and 4, same being the only claims which I find material to or covering the structure of defendant complained of by plaintiff.