## BARBER–COLMAN CO. v. WITHNELL.

Circuit Court of Appeals, First Circuit.
June 16, 1927.

No. 2115.

1. Patents ⊚⟩328—977,166, for thread-selecting device in warp-drawing machine, held not infringed.

Colman patent, No. 977,166, for thread-selecting device in warp-drawing machine, as limited by the prior art, held not infringed.

2. Patents ⊚⟩328—1,115,399, for warp-drawing machine, held not infringed.

Colman patent, No. 1,115,399, for warp-drawing machine, held not infringed.

3. Patents ⊚⟩328—1,442,776, for warp-tying machine, held void for want of novelty.

Colman patent, No. 1,442,776, for warp-tying machine, claim 218, held void for lack of novelty, in view of the prior art.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Suit in equity by the Barber-Colman Company against James Withnell. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 14 F.(2d) 780.

Horace Van Everen, of Boston, Mass., and Lincoln B. Smith, of Chicago, Ill., for appellant.

Marcus B. May, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a bill in equity for infringement of three patents to H. D. Colman. The first is letters patent No. 977,166, applied for January 15, 1906, issued November 29, 1910. The second is No. 1,115,399, applied for May 18, 1906, issued October 27, 1914. This patent is a continuation in part of an application filed October 24, 1894. The third patent is No. 1,442,776, applied for May 19, 1904, and issued January 16, 1923.

The first patent is for what the patentee terms a selector, an element in a thread-taking mechanism, which directly engages the threads of a warp and presents them to other mechanism, to be automatically drawn through the necessary harnesses and reed, or presents them to a tying mechanism, which ties each thread of the new warp to the corresponding thread of an old one, on which the reed and harnesses have been mounted.

The second patent is for a warp-drawing machine, which selects and draws each thread of a warp through the necessary harnesses and reed.

The third patent is for a warp-tying machine, which selects and ties each thread of a new warp to the corresponding thread of an old one already drawn through harnesses and reed.

The defenses are noninfringement and invalidity by reason of the prior art, if construed broadly to cover the defendant's machine and otherwise.

The claims of the 1910 patent, here in issue, are Nos. 1, 2, 3, 4, 9, 10, 11, 16, and 17, and are fairly represented by the following claims:

"2. A thread-selecting device having an impaling member located at a point between the ends of said device.

"3. A thread-selecting device provided with a hook having a sharp impaling end."

"9. A thread-selecting device having an impaling member and a guide-portion."

"16. In a thread-selecting mechanism, a device having means for loosely engaging a thread and for impaling a thread."

In the 1914 patent, the claims in issue are Nos. 5, 12, 98, 99 and 103, and are fairly represented by the following claims:

"5. In a textile machine, in combination, means for supporting a warp, means for taking a thread from said warp, a pawl and ratchet feeding mechanism for producing a relative feed movement between the thread-taking means and the warp, and means adapted to be acted upon by a warp thread for limiting the effective engagement between said pawl and said ratchet."

"12. In a textile machine, a warp support, a thread selector arranged to reciprocate across the edge of a warp secured in said support and remove the foremost thread, means for causing relative approaching movement between the warp support and the selector, and a sensitive feeler finger arranged to bear against the foremost thread and to control the moving means."

In the 1923 patent, claim No. 218 is in issue, and reads as follows:

"218. A machine for operating upon warp threads having, in combination, a bed, warp-supporting means, a carriage arranged to travel longitudinally of said bed and transversely of the warp threads, operating mechanism on the carriage, and thread-controlled means for suspending the travel of the carriage."

In the District Court it was found that none of the claims in issue in the 1910 patent were infringed, construed in the light of the

prior art; that the claims in issue in the 1914 patent were not infringed, whether construed in the light of the prior art or not; that the organization for starting and stopping the feeding mechanism was basically different; and that as to the claim of the 1923 patent, construed in accordance with the plaintiff's view, as covering only mechanism which stopped the travel of the carriage and at the same time permitted the rest of the machine to continue, the claim was anticipated by the prior art and invalid.

[1] In the plaintiff's machines it is essential that the selector used in selecting the threads to be drawn through the harnesses and reed of its warp-drawing machine, or to be presented to the tying mechanism in its warp-tying machine, should be so constructed that, as the selector comes in contact with the foremost thread of a warp, it should select and take but a single thread. If it should take two or more threads, the result would be bad weaving and defective product. To guard against this the plaintiff's patentee devised a selector, having a guide portion at its foremost or free end, and a short distance from that end a hook or notch; the projecting end of the hook being made sharp and pointed like a needle. These selectors are made with notches of different sizes, and, for a given operation, a selector is chosen the size of which is such as will receive the smallest thread in the warp. As the threads in the warp vary in size, and some would be too large to be seated in a notch adequate to receive the smallest thread, such larger thread is impaled or pierced by the needle-like point of the hook and removed, which otherwise would not be the case.

In the defendant's machine it is not essential that only a single thread be taken by the selector and presented to the operative to be drawn by hand through the harness and reed. In his machine it makes no particular difference whether a single thread, or two or three threads at a time, are presented to the operative, so far as the product of the weaving is concerned. It may slightly delay the work of the operative, but otherwise is of no consequence; and this is for the reason that the drawing of the threads through the harnesses and the reed in connection with his device is not a machine operation, but a hand operation. Such being the case, the nice adjustment of the hook and its projecting end with reference to the guide portion, essential to the plaintiff's selector in the operation of its warp-drawing and warp-tying machines, is not essential to the defendant's selector in his machine, which simply selects the threads of a warp to be thereafter acted upon by hand.

The defendant obviates the necessity of choosing a selector of a definite size for a given piece of work by providing a screw or screws, whereby the thin blade of the hook projecting from the side of . the selector and forming a notch may be adjusted to receive a given size of thread. The idea of making the notch of the hook adjustable was old in the art. The projecting end of the defendant's hook is not made needle-pointed, as in the plaintiff's selector, but is a thin blade, like the edge of a chisel or wedge.

The idea of a selector with a guide end and a projecting hook for selecting threads from a warp was not new with the plaintiff's patentee; that idea had been developed long before his day. See prior art devices referred to in the opinion of the District Court. A form of selector very similar to that of the plaintiff's, having a guide portion and a V-shaped notch or hook, is shown in the prior art patent to Ingersoll, No. 590,008, granted September 14, 1897. The drawing shows the point or edge of the hook to be chisel-shaped like that of the defendant. All selectors are very small instruments, as the exhibits in evidence of the plaintiff's and defendant's selectors show, and necessarily so, as the article with which they have to deal, a thread in a warp is very small. The hook being small to meet the size of the thread, its point is consequently very small, whether, in the selecting process, it is intended to impale a thread or to pass between too closely connected warp threads. In view of this, the District Court found that the hooks upon selectors of the prior art were such that they necessarily at times pierced or impaled a thread that was too large to be seated in the jaw of the hook, although they were not intended for that purpose, and that in this particular the defendant's hook, which was not intended for that purpose, did not differ from the prior art, and that the claims of the plaintiff's 1910 patent, construed in the light of the prior art, were limited to a selector, the projecting hook of which had a needle-like point, and, so construed, the defendant's device did not infringe. In this we are in accord with the conclusion reached by the court below.

If, as plaintiff appears to argue, the language of claim 16 of this patent—"means loosely engaging a thread"—embraces, in addition to the guide portion of the selector, a spring-pressed selector pivotally mounted, permitting movement to and from the warp, this is also shown in the Ingersoll patent above referred to. We do not, however, in-

tend to be understood as holding that the claim includes this additional element.

[2] The 1914 patent is for a machine for drawing warps automatically through harnesses and reed. It has never been commercially manufactured and sold, and some of the inventions covered by it were made by Colman, as early as October 24, 1894, as above stated. The claims in suit relate to a thread-controlled sensitive feed for the carriage, whereby the operating parts of the machine are kept in contact with the leading warp thread. It was old in the art long prior to Colman, both in warp-drawing and warp-tying machines, to advance the operating mechanism to the warp, or advance the warp to the mechanism, and to have a small, thin selector, with a guiding surface and projecting hook to guide, engage and carry forward the leading warp thread to be acted upon by the warp-drawing or warp-tying mechanism.

In claim 12 of this patent, which is typical of the others, the elements involved are: (1) A warp support; (2) a thread selector, arranged to reciprocate across the edge of a warp on said support and remove the foremost thread; (3) a carriage causing relative approaching movement between the warp and the selector; and (4) a sensitive feeler finger, arranged to bear against the foremost thread and to control the means for moving the carriage. It is conceded that this combination and its elements are old, with the exception of the last element, and one question is whether that element in such a combination is shown in the prior art.

The feeler finger of the plaintiff's device is a long, delicately balanced lever under the tension of a light spring, which tilts the top forward. The top contacts with the leading warp thread. The advance of the carriage on which the feeler is mounted overcomes the spring, and the pressure of the leading warp thread or threads swings the top back. This backward motion of the feeler throws out of action a pawl and ratchet mechanism by which the carriage is advanced, bringing the carriage to rest. After the leading warp thread has been taken away by the selector, the spring causes the feeler to retake its advanced position. This causes the pawl to again contact with the ratchet and move the carriage forward, until it is again brought to rest by the backward movement of the feeler. In this patent the feeler mechanism is separate and independent of the selecting mechanism.

In the defendant's machine the selector possesses the additional function of a feeler.

This selector feeler is mounted on a delicately balanced lever having a light spring, which tends to draw the guide and feeler end toward the leading thread, at one stage of the selector feeler cycle. The selector feeler, on coming in contact with the leading warp thread, causes the carriage to stop. Although the carriage, when in motion, is taken forward by a pawl and ratchet movement, the contacting of the selector feeler with the thread does not operate to throw the pawl out of engagement with the ratchet to stop the carriage, or to replace the pawl on the ratchet to restore movement. The pawl always remains in engagement on the ratchet, and is always at rest, except when it is kicked forward by the tail of the lever in which the selector is mounted, or is kicked back by the tail of another and independently operated lever.

In the Biggs patent of the prior art, when the leading warp thread by the advance of the carriage comes in contact with and depresses a pivoted feeler or trigger, the carriage is stopped, and remains so until the thread contact with the trigger is removed, when the carriage resumes its forward movement. In that device the carriage is drawn forward by a weight controlled by a gear which carries a check stud that is engaged by the feeler. In the plaintiff's machine the carriage is moved by a ratchet and pawl driven by the power on the machine. Other prior art patents relied upon disclose mechanism whereby the action of the machine is continued or arrested with reference to the leading warp thread, showing that the idea of controlling the feed through mechanism depending for its operation upon the leading warp thread was not new with Colman. When Colman's machine is in use, his feeler is in constant contact with the leading warp thread, and yields to the advance pressure of the carriage. It has no motion, except the backward and forward one heretofore described, and its sole function is that of a feeler. The defendant's selector feeler is carried on a short lever mounted on an arm, which is moved by a revolving cam. It moves lengthwise and also oscillates. At one stage it is given a circular movement, due to its tail being drawn over a stationary cam. A large part of the time, though in operation, it is not in contact with the warp threads at all, being either back of the warp or some distance ahead of it. It has a sliding motion past the warp. At another stage of its movement it responds to a light spring, and is pulled against the leading warp thread, which momentarily limits its motion in that direction.

If the carriage be close to the thread, so that the pull of the spring is resisted by it, and the selector feeler is thereby kept nearly vertical to the warp, the feed mechanism of the carriage remains out of action. If, on the other hand, the carriage is so far from the warp that the selector feeler is on a decided slant when it comes in contact with the leading warp thread, the feed mechanism of the carriage operates, and the carriage moves up, until the selector feeler becomes so nearly vertical as it touches the warp that it again throws the feed out of action. After contacting with the warp, the selector feeler slides forward, seizes the leading warp thread by its notch, and, having separated it from the others, places it upon the tooth of a presenting wheel, where it is taken by the operative.

The District Court was of the opinion that there was a radical difference between a feeler swinging forward and back around a stationary pivot, and in constant contact with the warp, as in plaintiff's device, and one which moves in every direction and during most of its cycle is entirely out of contact with the warp, and makes use of the warp only to limit its forward play at a certain point in its cycle, as in defendant's device; that the prior art showed broadly that the leading warp thread was the thing by which the carriage must be controlled, and disclosed specifically a particular method of so doing in the use of that thread; that Colman showed another method for accomplishing the result by the continued pressure of the feeler against the warp thread produced by the movement of the carriage; and that the defendant showed a still different and a distinct method, to wit, by the momentary and slight pressure of the selector feeler on the leading thread, brought about, not by the movement of the carriage, but by the rotation of a cam which projects the selector feeler into the line of the warp, whereupon a slight spring pulls it against the leading warp thread; and, such being the case, the defendant's device did not infringe. We think this conclusion is correct.

[3] As to the 1923 patent, we regard the claim in issue as invalid, in view of the prior art as shown in the Colman 1914 patent, which was applied for by him some 10 years prior to the 1923 patent. The only difference between the combination of claim 218 of the 1923 patent and the mechanism described in the 1914 patent is the moving of the selector mechanism mounted on the carriage relative to the warp, instead of the moving of the warp mounted on the carriage relative to the

selector mechanism, a mere equivalent. It was not new to move the selector relative to the warp, and nothing novel is set forth in the claim. The patentee is presumed to have known this when he made his application for the 1914 patent, and should have claimed it then, if at all. National Electric Ticket Register Co. v. Automatic Ticket Register Corp., (C. C. A.) 15 F.(2d) 257, 258.

The decree of the District Court is affirmed, with costs to the appellee.