**KENDALL CO. v. TETLEY TEA CO., Inc.**

No. 4547.

United States Court of Appeals
First Circuit.

June 1, 1951.

---

Hector M. Holmes, Boston, Mass. (H. L. Kirkpatrick, Edgar H. Kent and Fish, Richardson & Neave, all of Boston, Mass., on brief), for appellant.

T. Clay Lindsey, Hartford, Conn. (George P. Dike, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

In this patent infringement suit, the court below gave judgment for the defendant upon a holding that the claims in suit are invalid. 89 F.Supp. 897. The patent in question, No. 2,277,050, is a product patent for an infuser, particularly a tea bag. It was applied for by Raymond E. Reed and John F. Ryan, designated as joint inventors, and was issued on March 24, 1942, to appellant herein, The Kendall Company, as assignee. The Kendall Company, a manufacturer of various woven and non-woven fabrics, does not itself manufacture tea bags, but it does manufacture a fabric known as "Webril", a form of which is designed for use in the making of tea bags. Using a competing material purchased from C. H. Dexter & Sons, Inc., the defendant-appellee Tetley Tea Company manufactures heat-sealed tea bags alleged to infringe the patent in suit. Dexter has conducted and controlled the defense of the case, having agreed to indemnify Tetley for any loss sustained on account of the alleged infringement.

Raymond E. Reed came to the Kendall Mills Division of The Kendall Company

at Walpole, Massachusetts, in December, 1933, to take a principal part in a research project devoted to the development of a fabric which would not require the expensive processes of spinning and weaving. The broad idea was that thermoplastic fibers, particularly those of cellulose acetate, might be so treated as to form webs or fabrics either alone or in conjunction with non-thermoplastic fibers, such as cotton or wool, and that these cheaper materials might replace the more expensive woven fabrics. After many experiments it was found that an apparently useful product could best be formed by producing with textile machinery a web of cellulose acetate fibers and cotton fibers intermingled, and then subjecting the web to heat and pressure to develop the inherent adhesive properties of the cellulose acetate fibers so that they would adhere to each other and to the cotton fibers at intersecting points. Thus could be formed a material of some tensile strength, and wide variations in pliability and porosity depending upon the ratio of cellulose acetate fibers in the mixture and the degree of heat and pressure used. It was found preferable to add a plasticizer to the cellulose acetate fibers in order to lower the temperature at which the fibers would become adhesive, and such plasticizers were obtained on the commercial market. Reed and his co-workers also found that several webs so formed could be superimposed and subjected to heat and pressure to produce laminated products of varying thicknesses.

The experiments had reached such a state of development by July 5, 1935, that Reed, as sole inventor, on that day filed an application in the Patent Office (Serial No. 30,022) setting forth the above discoveries in considerable detail and describing the various types of fabric which might be produced by variations in the method. No mention was made in the application of the possible use of the fabric for the manufacture of tea bags or other infusers. On December 2, 1935, Reed filed an application for a patent for a collar and cuff interliner, which eventuated in patent No. 2,202,025 issued May 28, 1940, to Kendall as assignee; the disclosure in this applica-

tion described the method of making the interlining material substantially as in the previous application (Serial No. 30,022), but the claims were limited to its use as a collar fabric. On November 6, 1939, Reed, as sole inventor, filed an application for a patent on a textile fabric and method of making the same, the application being described as "a continuation, in part, of my copending application Ser. No. 30,022, filed July 5, 1935." It is conceded that in essential parts "the continuing case discloses exactly the same invention described and claimed in the original application. In fact, most of the claims were taken from the original case, some of them being modified slightly in order better to define the invention, and many of them being copied verbatim." The earlier application, Serial No. 30,022, was afterwards abandoned, and the continuing application eventuated in patent No. 2,277,049, issued to Kendall as assignee of Reed, on March 24, 1942, the same date on which the patent now in suit was issued.

Meanwhile, by August of 1936, Reed had conceived the idea that a form of the above-described fabric, which goes by the trade name "Webril", and was so trade-marked in 1938, might be useful for the manufacture of tea bags; and he experimented with the development of a satisfactory material for this purpose. He thought at that time, however, that it would be necessary to kier-boil and bleach the fabric after its manufacture in order to render it tasteless and non-toxic. This had been the process used in the making of the prior-art gauze tea bags, but such process when used on the Webril fabric chemically regenerated its thermoplastic fibers to pure cellulose and thus rendered the fibers no longer thermoplastic. Therefore, while the fabric was made originally as disclosed substantially in the 1935 application, it could not be made into a heat-sealed envelope, and could be used only in a stapled or sewed tea bag. The product in this form was apparently not marketed commercially.

In January, 1937, Reed went to work for appellant's subsidiary, Bauer & Black, in Chicago. In the following month Dr. John F. Ryan was employed at the Kendall

plant in Walpole to work on various Webril products, including tea bags. When Reed returned to Walpole in August, 1938, he and Ryan collaborated on the further development of the tea bag. According to Reed's testimony, in late 1938 or early 1939 he and Ryan first conceived the idea of fabricating a material which would not have to be kier-boiled and bleached and which would be heat-sealing. During Reed's absence there had been developed an improved method of bleaching cotton fibers so that they would be pure and tasteless, and by experimentation Reed and Ryan found that at least two plasticizers were available which were tasteless and non-toxic. These plasticizers, prepared by Monsanto Chemical Company under the names Santicizers E–15 and M–17, had been known at least before 1937 and had been tried out by Reed on other products. To make the fabric heat-sealable, it was found preferable that a relatively heavy concentration of the thermoplastic fibers be placed on one surface and a light concentration on the other, so that the material would not stick to the heat-sealing machine. To accomplish this, Reed and Ryan designed a fabric consisting of three plies or webs hot-calendered together, the top web consisting of 60 per cent thermoplastic fibers, the other two containing only 5 to 10 per cent of such fibers. This material, known as Webril 1300, was placed in commercial production around August, 1939, the earliest sale appearing to be in the following month.

On August 31; 1940, Reed and Ryan, as joint inventors, applied for the patent in suit. Their disclosure opens by pointing out the wide use of infusers for the packaging of foodstuffs, such as tea and coffee, as well as their use by chemists, druggists, and others; and explains that for purposes of convenience the infuser will be referred to thereinafter as a "tea bag" and the material to be infused as "tea". The inventors then proceed to. list as the three fundamental requirements of a satisfactory tea bag (1) that it be sufficiently water-permeable to allow rapid infusion, (2) that the structure of the bag be such as to prevent any substantial sifting through of the tea leaves, and (3) that it be very inexpensive to manufacture. They point out the disadvantages of the prior-art tea bags, such as those made of gauze or paper. They recite that they have discovered a way of making a satisfactory tea bag by using "an unwoven fabric from unspun fibers * * * preferably. * * * by mixing textile fibers of the common types with other fibers having latent adhesive properties, and then developing such properties and thereby uniting a sufficient number of the fibers to produce a coherent, porous fabric structure." As an example, it is stated that plasticized cellulose acetate and bleached cotton fibers in the proportions of 40 per cent of the former and 60 per cent of the latter may be mixed together by feeding into a picker lapper. "After the mixture has been converted into lap rolls on this machine, it is then carded and the webs from three carding machines are next superposed or combined to produce a single web which is subsequently treated to develop the latent adhesive properties of the cellulose acetate fibers. Such a treatment may consist in hot-calendering the combined web, the rolls being heated to a sufficient temperature to soften, somewhat at least, the exterior of the cellulose acetate fibers and thus make them adhere firmly to the cotton fibers." The disclosure points out that rayon and other non-thermoplastic fibers may be used in place of cotton, and that other thermoplastic fibers, such as vinyl, may be used as the binder. Further, the inventors indicate that while the above-described fabric is heat-sealable, a more satisfactory heat-sealing fabric can be made by concentrating a larger proportion of thermoplastic fibers on one surface; and they show how this can be done by placing on the top surface a web containing 60 per cent thermoplastic fibers and decreasing the proportion of such fibers in the other two webs to 5 or 10 per cent. In the specifications they do not confine themselves to the use of their described fabric in a heat-sealed infuser, but also suggest that it may be used in a sewed, stapled, or pouch-type bag. They conclude with the usual broad statement that they have disclosed only the preferred form of their invention and

that some, or all, of the advantages and novel features of the invention may be obtained in modified embodiments of it.

The claims in suit are Nos. 1, 2, 3, 5, 12, and 14, the last two of which incorporate by reference, and amplify, claim 4.

Claim 1 covers: "An infuser comprising a porous envelope for enclosing a material adapted to be infused in a liquid, a substantial portion at least of said envelope consisting essentially of heterogeneously intermingled unspun water-insoluble fibers bonded together to form a fibrous structure highly pervious to liquids, a substantial proportion of said fibers having normally latent adhesive properties adapted to be developed by heat."

Claim 2 is identical with claim 1, except that instead of the final phrase it calls for "a substantial proportion of said fibers being thermoplastic and the envelope including overlapped layers united by the direct adhesion of the thermoplastic fibers of one layer to fibers of another layer." (In other words, claim 2 is specifically limited to a heat-sealed bag, which apparently claim 1 is not.) Claim 3 adds to claim 1 only that the "said fibers having normally adhesive properties are stable in hot water but are adapted to become adhesive at temperatures above that of boiling water"; this claim, like claim 1, is also apparently not limited to a heat-sealed bag. Claim 5 substitutes for the last phrase in claim 1 "a high proportion of said fibers having normally latent thermoplastic properties and being present in such quantity as to make said portion of the envelope inherently heat-sealable due to the presence of said thermoplastic properties." (This claim, the same as claim 2, by way of contrast with the language of claims 1 and 3, indicates that the latter claims are not confined to heat-sealed bags, or even to bags having a sufficient proportion of thermoplastic fibers to be heat-sealable.)

Claim 4, which is incorporated by reference in claims 12 and 14, reads: "An infuser comprising a porous envelope for enclosing a material adapted to be infused in a liquid, a substantial portion at least of said envelope consisting essentially of an unwoven sheet material composed of unspun fibers and a water-insoluble binder distributed in a discontinuous form substantially throughout said portion of the envelope, said binder and said fibers being adhesively united into a sheeted structure, highly pervious to air and water but capable of substantially preventing sifting of dry particles of said material therethrough, said binder having normally latent adhesive properties adapted to be developed by heat." (This requires only "an unwoven sheet material" and a water-insoluble latently adhesive binder, not necessarily in fiber form.) Claim 12 adds that marginal portions of the porous envelope described in claim 4 "are united by the adhesive properties of said thermoplastic binder"; thus the claim is limited to a heat-sealed tea bag, but the material need not contain any thermoplastic *fibers*. Claim 14 covers an infuser as in claim 4, "in which said binder is present in fiber form and the concentration of binder fibers is considerably higher in one surface of said sheet material than in the opposite surface", but claim 14 is not limited to heat-sealed bags.

As an alternative ground of decision, the court below held the patent invalid because whatever invention was disclosed in the application was that of Reed alone, not of Reed and Ryan jointly. There is authority for the proposition that where two or more persons obtain a joint patent for what was invented solely by one of them, the patent is void. Duplex Envelope Co., Inc., v. Denominational Envelope Co., 4 Cir., 1935, 80 F.2d 179, 186; 1 Walker on Patents (Deller's ed.) § 118, and cases cited. We are not prepared to depart from this rule, though it was sharply criticized in a dictum in Buono v. Yankee Maid Dress Corp., 2 Cir., 1935, 77 F.2d 274, 278. Nor are we prepared to take the distinction suggested in De Laski & Thropp Circular Woven Tire Co. v. William R. Thropp & Sons Co., D.C.D.N.J., 1914, 218 F. 458, 465, affirmed 3 Cir., 1915, 226 F. 941, that the rule should be inapplicable where the patent is issued directly to the assignee of the purported joint inventors. It is difficult to see how the assignee could stand any better than his assignors; if a patent must be issued to the inventor, not

to the inventor and another, it would seem that the application for the patent must be signed by the inventor, not by the inventor and another, whether or not the patent is issued directly to an assignee.

 However, it is generally agreed that this defense is a technical one regarded with disfavor by the courts and requiring very clear and convincing proof to sustain it. Klein v. American Casting & Mfg. Corp., 2 Cir., 1937, 87 F.2d 291, 294. Contrary to the view taken by the district judge, we think that on the evidence in the record, if the disclosure in the patent in suit is deemed to be a sufficient advance over the prior art to constitute invention, the invention is that of Reed and Ryan jointly, not of Reed alone. Prior to his collaboration with Ryan, Reed had apparently not conceived of a heat-sealing infuser. True, Reed alone had developed the method of making the Webril fabric, a variation of which was later used for the infuser described in the patent in suit, and he had also recognized that such fabric might be usable as a tea bag. But it was the joint work of Reed and Ryan from the fall of 1938 to August of 1939 that brought forth the actual product described in the patent. The only tea bag conceived of by Reed previous to his association with Ryan, so far as the record shows, was one made from Reed's basic material, but subsequently kier-boiled and bleached, and not heat-sealable. The two men together recognized and worked out the problems of tastelessness, non-toxicity, and heat-sealability. Whether that was a sufficient advance over the prior art to justify a patent to Reed and Ryan as joint inventors remains to be considered.

 So far as concerns prior-art tea bags, we do not think enough was shown to make out an anticipation of the alleged joint invention by Reed and Ryan, though their claims were perhaps too broadly stated. No doubt, the idea of a tea ball or tea bag is quite old, and the conception of using any particular existing material to make such a product could hardly, without more, amount to a patentable invention. Cf. Hotchkiss v. Greenwood, 1850, 11 How. 248, 13 L.Ed. 683, with Smith v. Goodyear Dental Vulcanite Co., 1876, 93 U.S. 486, 23 L.Ed. 952. Most of the earlier tea bag patents involved the use of some perforated material, such as parchment paper, and depended for their novelty principally on the particular design employed: e. g., patent No. 1,247,906 to Tully; patent No. 1,489,807 to Anderson; patent No. 2,138,358 to Salfisberg; patent No. 2,149,713 to Webber. And, as admitted by the disclosure in the patent in suit, non-perforated, inherently porous material, such as gauze or filter paper, was in common use in the tea bag manufacture at the time of the present claimed invention. Moreover, the idea was not new of utilizing some thermoplastic material so as to make the fabric heat-sealable, and thus to eliminate the operations of sewing or stapling; though prior patents had referred only to the use of some thermoplastic coating, not to the use of thermoplastic fibers. See Salfisberg, Webber, supra.

Thus the differences between the disclosure of the patent in suit over the prior-art tea bags seem to be chiefly two: (1) The use of a thermoplastically bonded fabric which is inherently porous, and is unwoven or unspun; and (2) the incorporation of thermoplastic *fibers* to make the infuser heat-sealable.

In view of the nature of the disclosures in the patent in suit, it is proper also to consider whether developments in the prior art of bonded fabrics constitute an anticipation of the claimed invention.

The use of thermoplastic fibers in conjunction with non-thermoplastic fibers in producing an adhesively bonded material was not new (Italian patent No. 364,516 to Francis; patent No. 1,903,960 to Dreyfus; patent No. 2,011,914 to Schwartz; patent No. 1,829,585 to Dreyfus and Miles). Nor was there novelty in making a laminated product (Dreyfus and Miles, supra), or one in which webs from three or more carding machines were combined by a binder, as in patent No. 810,935 to Goldman, though here the binder was in powder form. Apparently, however, prior to the date of conception of the claimed invention in suit (late 1938 or early 1939), or to the date of its reduction to practice (August,

1939), there had been issued no patent disclosing the particular type of fabric described in the patent in suit; that is, an unwoven material, produced on textile machinery, formed by laminating webs of mixed thermoplastic and non-thermoplastic fibers by heat and pressure; nor had any similar material been devised which was suitable for a tea bag. We do not think that patent No. 1,829,585 to Dreyfus and Miles or patent No. 1,903,960 to Dreyfus constituted a sufficient anticipation in this respect; the former involves a paper-type fabric and the latter apparently a woven fabric, and both are concerned with producing a waterproof material rather than a water-pervious material.

But we think that the textile fabric patent No. 2,277,049, issued to Kendall as assignee of Reed, may be cited against the patent in suit. As above stated, this patent goes back to an application filed by Reed alone on July 5, 1935 (Serial No. 30,022), which application was later supplanted by Reed's application of November 6, 1939. The situation here presented is not that of copending applications by the same inventor, with the earlier application cited as prior art against the later one. See National Electric Ticket Register Co. v. Automatic Ticket Register Corp., 2 Cir., 1926, 15 F.2d 257; Barber-Colman Co. v. Withnell, 1 Cir., 1927, 20 F.2d 373, 376; and In re Barton, 1929, 58 App.D.C. 373, 30 F.2d 997. These cases have been criticized (Stringham, Double Patenting § 2804B (1933)), but we need not examine into their correctness now. Reed alone is a different inventor from Reed and Ryan jointly. Dwight & Lloyd Sintering Co., Inc., v. Greenawalt, 2 Cir., 1928, 27 F.2d 823, 830; Denaro v. Maryland Baking Co., D.C., Md., 1930, 40 F.2d 513, 516, affirmed on opinion below 4 Cir., 1931, 50 F.2d 1074. Reed alone being the original and first inventor of the invention disclosed by his application Serial No. 30,022, supplanted later by his application of November 6, 1939, the disclosure by Reed and Ryan jointly, in their application for the patent in suit, cannot be held to be a patentable invention if the earlier invention by Reed alone was such an encroachment upon the field that what it left was too little by way of creative advance to support a patent. Alexander Milburn Co. v. Davis-Bournonville Co., 1926, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Western States Machine Co. v. S. S. Hepworth Co., 2 Cir., 1945, 147 F.2d 345. Whether the copending application in such a case should technically be described as "prior art" is quite unimportant. See the illuminating discussion by Learned Hand, J., in Western States Machine Co. v. S. S. Hepworth Co., supra, 147 F.2d at pages 348–349. See also Detrola Radio & Television Corp. v. Hazeltine Corp., 1941, 313 U.S. 259, 265, 61 S.Ct. 948, 85 L.Ed. 1319.

Reed's patent No. 2,277,049 discloses a textile method of making the Webril fabric with thermoplastic fibers, and the combining of two or more webs by running them through a heated calender. It also discloses that the proportions of the two types of fibers may be varied according to the particular qualities desired, such as "pliability, drape, firmness, porosity, and the like," and that the proportion of thermoplastic fibers may be increased from that shown in the specific illustration given (about 4 per cent) to any greater amount desired. The advances disclosed in the patent in suit over the disclosures in No. 2,277,049 would seem to be three only: (1) Using the unwoven bonded fabric in the manufacture of an infuser; (2) including sufficient thermoplastic fibers to make the material heat-sealable (30–40 per cent), and (3) employing three webs, one of which contains a far greater proportion of thermoplastic fibers, thus making the material more convenient for the heat-sealing operation.

As to (1) above: There was clearly no invention in the conception of making an infuser out of the fabric covered by patent No. 2,277,049. The Webril material was designed as a substitute for woven materials, and gauze had been used in the prior art as a common fabric for the manufacture of tea bags. Patent No. 2,277,049 discloses that the fabric described could be made more or less porous by varying the proportions of the two types of fibers and the amount of heat and pressure applied. Since claims 1 and 3 of the patent in suit

revealed only the use of such fabric in the manufacture of an infuser, without requiring that the infuser be heat-sealed, or even that the material contain sufficient thermoplastic fibers to render it heat-sealable, those claims are certainly invalid as lacking invention over the prior art. ·

As to (2) above, we do not think there is invention in the disclosure of including sufficient thermoplastic fibers to make the fabric heat-sealable. Claims 2 and 5 of the patent in suit describe an infuser which is heat-sealed, or the fabric of which is inherently heat-sealable because of the incorporation into the material of thermoplastic fibers. (Claim 12 also covers a heat-sealed infuser, but claim 4, which it incorporates by reference, does not require that the binder be in fiber form; thus claim 12 in its literal breadth is invalid as lacking invention over the prior art, as above indicated.) The characteristics of thermoplastic fibers were well known, e. g., patent No. 1,829,585 to Dreyfus and Miles; patent No. 1,903,960 to Dreyfus; and Reed's patent No. 2,277,049. Nor was there novelty in the idea of making a heat-sealed infuser, e. g., Salfisberg, supra; Webber, supra; patent No. 2,306,399 to Menzel. However, the disclosures in these patents taught the imparting of the quality of heat-sealability to the material by the use of a thermoplastic liquid coating or thermoplastic powder. It is apparently true that until the patent in suit, no one had conceived the idea of making the material for an infuser heat-sealable by incorporating thermoplastic fibers into the material. It is true also that Reed's patent No. 2,277,049 did not disclose the proportion of thermoplastic fibers necessary to make the Webril material heat-sealing, nor did it state that it was possible to make a fabric containing sufficient thermoplastic fibers for that purpose and yet being suffi-

ciently porous for use as an infuser. But if a tea bag manufacturer, after reading the No. 2,277,049 patent, had conceived the idea of using thermoplastic fibers to produce a heat-sealable tea bag, and had manufactured such an unwoven material on textile machinery (to which such patent is limited), he would clearly have infringed that patent. If the added concept of using a sufficient proportion of thermoplastic fibers in the manufacture of material for a heat-sealable infuser would not be sufficient to save the material from infringing patent No. 2,277,049, provided the material were made by the textile method, we do not see how there could be invention in a patent—such as the one in suit—which discloses only the textile method of making the material, but claims broadly the conception of using thermoplastic fibers to produce heat-sealed tea bags, regardless of how the material is made.[1] Claims 2 and 5, as well as claim 12 for the reason above stated, are therefore invalid for lack of invention.

As to (3) above, the patent cannot be sustained on the concept, without more, of employing a higher concentration of thermoplastic fibers on one surface rather than on the other in order to facilitate the heat-sealing operation. Claim 14 of the patent in suit is the only one which mentions this feature, though the claim is not in terms limited to heat-sealed infusers. Previous disclosures in the art of making heat-sealed infusers had naturally involved the concentration of the thermoplastic material on one surface and not the other. See Webber, supra; Menzel, supra, this being a copending application filed prior to the application for the patent in suit. Once it was recognized that it was desirable for the material to be heat-sealed in the making of the infuser, the facilitation of the heat-sealing operation by having one sur-

1. In the view we have taken of the case, it is not necessary to consider in detail the Dexter material, the use of which in the manufacture of a heat-sealed tea bag is alleged to constitute infringement of the patent in suit. Dexter's heat seal paper is not made with textile machinery, and admittedly does not infringe Reed's patent No. 2,277,049 on the Webril fab-

ric. Dexter's paper consists of fibers all of paper making length, bonded together by ordinary paper makers bond and a wet strengthening agent (melamine resin), a sufficient proportion of thermoplastic vinyon fibers being included in the mixture to impart to the material the heat-sealing characteristic.

face heat-sealable and the other not would seem to have been an obvious detail to one skilled in the art. Claim 14 is also invalid for lack of invention.

Furthermore, we think that Reed's patent No. 2,202,025, above mentioned, also may properly be cited against the patent in suit. This patent was applied for by Reed as sole inventor on December 2, 1935, and was issued to Kendall as assignee of Reed on May 28, 1940, which was prior to the filing of the application for the patent now in suit. While No. 2,202,025 covered only a material to be used as a collar interliner, it does make a disclosure very similar to that of Reed's 2,277,049 patent and the patent in suit, as to the production of an unwoven, thermoplastically bonded fabric, and in addition it discloses that the fabric is porous and can be made to adhere to the broadcloth or other collar fabric by the application of heat and pressure.

The judgment of the District Court is affirmed.