**C. H. DEXTER & SONS, INC., Plaintiff**

v.

**KIMBERLY–CLARK CORPORATION, Defendant.**

Civ. A. No. 58–1134–S.

United States District Court
D. Massachusetts.

Dec. 30, 1960.

As Amended Jan. 5, 1961.

Robert L. Thompson, Boston, Mass., of counsel, for plaintiff.

John M. Prutzman, T. Clay Lindsay, Hartford, Conn., Richard F. Walker, Boston, Mass., of counsel, for defendant.

SWEENEY, Chief Judge.

This is a patent suit in which the questions of the validity and infringement of the Osborne Patent, No. 2,414,833, assigned to the plaintiff, are involved. Claims 1 and 2 of the patent are in suit, Claims 3 and 4 being process claims having been withdrawn by stipulation of counsel.

Findings of Fact

The patent is addressed to a paper for infuser purposes, and as between the parties in this action, is confined to a highly porous paper material of sufficient strength to be used as a tea bag. It is composed of a layer of thermoplastic fibers lying on the top of and wedded to a layer of non-thermoplastic fibers. When the resulting paper is cut to a proper size, it is folded so that the surface carrying the layer of thermoplastic fibers comes in contact with itself at the edges, and then the edges are heat-sealed on the three open sides, forming a sealed envelope or tea bag, into which tea has previously been introduced.

The non-thermoplastic fibers may be any of the well-known paper-making fibers, such as manila hemp, caroa, jute, or India hemp, or synthetic fibers such as rayon, but the patent emphasizes that "they must be extremely long, unbeaten, and non-hydrated".

The thermoplastic fibers are plasticized cellulose acetate and vinyon fibers, but in practice, vinyon, which is a mixture of copolymer of vinyl chloride and vinyl acetate, is used, because of its low fusing point.

The patent specifies that there must be some intermingling of the two types of fibers, for if there were not, the two layers would fall away from each other upon drying. The wedding of the two layers is effected in the following manner. A primary head box containing a wet solution of the non-thermoplastic fibers opens on to and deposits these fibers on a tilted (about 45°) continuous Fourdrinier wire screen which travels upwards. Another channel downwardly inclined containing the thermoplastic fibers feeds these fibers onto the same wire at the same time, under a mechanical arrangement which places the non-thermoplastic fibers underneath the thermoplastic fibers, but slightly mixed with them. The speed of the wire and the speed of the suspension feed of the thermoplastic fibers is such that the extremely dilute suspension of both the thermoplastic and non-thermoplastic fibers prior to deposit on the screen is in a state of formation and not set, but so arranged that non-thermoplastic fibers constitute the lower layer and the thermoplastic fibers are imposed upon it, mixed only to an extent which would allow for a slight penetration of the thermoplastic fibers into the layer of non-thermoplastic fibers, diminishing downwardly to anchor one to the other, but not sufficiently to cause the thermoplastic fibers to reach the bottom of the layer of non-thermoplastic fibers. Absence of any thermoplastic fibers on the bottom of the paper is a big feature of the patent, and it was this freedom of the lower base of the non-thermoplastic fibers from the presence of the thermoplastic fibers that differentiated this invention from the previously well-known methods of making infuser paper. Thus, the product is a sheet of water-laid paper consisting of thermoplastic fibers predominant on the upper sides of the paper, and thoroughly anchored to the lower layer of non-thermoplastic fibers by extending downward into the non-thermoplastic fibers, but not to the bottom of the sheet.

I find that in spite of the theories advanced in claims 1 and 2 of the patent

and the contention of the plaintiff at the trial of this case that in the plaintiff's product the thermoplastic fibers do extend into and are exposed to some extent on the bottom of the layer of non-thermoplastic fibers so that on microscopic examination of the bottom of the bonded material the thermoplastic fibers can be seen. I therefore find and conclude that the material which the plaintiff manufactures does not adhere to the stressed claims of the patent that "the bottom of the sheet is, and must be, composed entirely of non-thermoplastic fibers for reasons which will be pointed out", (line 33, column 4 of the patent in suit), and "the thermoplastic fibers * * * are not permitted in any way to be present in the under surface thereof". I find that the plaintiff's product, which has had pronounced commercial success does not read on the claims of the patent, and is a differently composed material from that described in the patent. The commercial success of its product therefore cannot be utilized to bear on the question of validity. In Kendall Co. v. Tetley Tea Company, Inc., 1 Cir., 1951, 189 F.2d 558, the plaintiff here was the active defendant and openly conducted the defense. The Circuit Court of Appeals set out at length the history of tea bags made of many materials, and many improvements culminating in the Reed and Ryan Patent No. 2,277,050, which for the first time produced a tea bag disclosing the use of a thermoplastically bonded fabric unwoven and unspun, with the incorporation of thermoplastic fibers to make the infuser heat-sealable.

Dreyfus and Miles, No. 1,829,585, and Reed clearly exposed the characteristics of thermoplastic fibers. Menzel No. 2,-306,399 disclosed a tea bag which is composed of a paper coated with vinyon on one side as an adhering surface. Sale No. 2,098,733 taught the integration of different strata of cellulose pulp through the intermingling of fibers. In this state of the art Reed and Ryan No. 2,277,050, which disclosed a heat-sealed bag composed of thermoplastic and non-thermoplastic fibers was held invalid. Such advance as was made by Osborne in the light of the above was not invention, but was the result of experimentation by one well versed in the art of paper making. The question of the ratio of thermoplastic fibers to non-thermoplastic fibers into the shaping and application of the material does not amount to invention, but is properly the subject of experimentation by those skilled in the art. I therefore find for the defendant on the question of validity.

But, if the validity of claims 1 and 2 of the patent is sustained on appeal, I find that the defendant has not infringed them. As previously indicated, one of the most probable turning points in the grant of this patent was the strong and repeated assertions that the plaintiff's product was absolutely free of thermoplastic fibers. I find that the defendant's product does not include this characteristic, but on the contrary, has been found to contain many thermoplastic fibers on the non-adhering surface. The use of chemicals to clean the heat-sealing jaws makes it unnecessary to even attempt to duplicate a material having a "bottom being composed entirely of non-thermoplastic felted fabrics" as described in the claim.

## Conclusion of Law

From the foregoing, I find and rule that claims 1 and 2 of the Osborne Patent No. 2,414,833, assigned to the plaintiff are invalid. I also find that claims 1 and 2 of the Osborne Patent, if valid, are not infringed.