**HANDLEY PAGE, LIMITED, v. LEECH AIRCRAFT, Inc.**

**No. 120.**

Circuit Court of Appeals, Second Circuit.

March 18, 1942.

Fred Gerlach, of Chicago, Ill., and Ralph J. Leibenderfer, of New York City, for defendant-appellant.

Knight Bros., of New York City (Ray T. Ernst, of New York City, of counsel), for complainant-appellee.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This suit is to recover for infringement of U. S. Patent No. 1,422,614, which was granted July 11, 1922, and expired during the pendency of the suit and prior to the entry of a decree for the complainant therein. The District Court held Claims 1, 2 and 4 valid and infringed and appointed a special master to report damages and profits.

The specification discloses a wing-construction, embodying new and useful improvements in means for balancing and regulating the lift of aircraft. The invention is thus described: "In order to vary the relative lift of the wings on the port and starboard sides of an aeroplane flying machine to maintain the lateral stability of the * * * machine about the axis of flight, or to cause the lift of both wings on opposite sides of said machine to be increased, flaps or ailerons, hereafter termed flaps, are usually provided, being hinged adjacent their forward edges to the rear edges of the wings, and which flaps can be increased in angle or turned downwards as required by means operable by the pilot and which means are so well known as not to call for description in this specification, and the object of the present invention is to provide means, as hereafter described and claimed, by which the effect produced by such hinged flaps is greatly increased."

The inventor goes on to say that he has ascertained, as the result of numerous experiments, "that by the wing having a slot or slots through the wing structure from the under surface to the upper surface and extending in length transversely to the line of flight, the lift of such a wing can be increased by admitting air from the under side to the upper side of the wing surface by way of said slot or slots, and when the wing is flown at large angles of incidence the lifting effect is considerably increased. As a further result of experiments I have found that the openings of the slots on the under surface of the wing structure should preferably be larger and more forwardly located than the openings on the upper surface."

The following claims were sustained and are in issue: "1. In laterally balancing or regulating the lift of the wings of aeroplane flying machines; the combination with said wings, of flaps located at the rear edges of said wings, hinge members to support said flaps, and means extending from the structure of said wings to support said hinge members in such position relatively to said wings and said flaps, that a slot is formed between the forward edge of each of said flaps and the rearward edges of said wings when said flaps are turned downwards about their hinges, and said slot is closed when said flaps are in their normal or upturned positions."

Claim 2 only differs from Claim 1 by adding the following: "and constructing the rearward edges of said wings adjacent the forward edges of said flaps inclined upwardly and rearwardly from the lower surface to the upper surface of said wings to produce slots larger on the under surface than on the upper surface of the structure when said flaps are turned downwards about their hinges."

Claim 4 adds to Claim 1 the following: "and constructing the rearward edges of said wings adjacent the forward edges of said flaps concavely curved from the lower

surface to the upper surface to produce slots having openings larger on the lower surface than on the upper surface and having the walls of said slot comprised by the rear edges of said wings and the forward edges of the flaps curved rearwardly from the under surface to the upper surface."

Ailerons are moveable to three positions —normal, downturned and upturned—and are used to increase the lift of one wing and reduce the lift of the other. Flaps pivoted at the trailing edge of the wings and designed to swing between the normal and downturned positions only, have long been used to facilitate the landing of aeroplanes. These "landing flaps" are not upturned from normal position but are simultaneously depressed from normal position when it is desired to increase the lift of the wings. It is conceded that such flaps were old in the art.

During the years 1919 and 1920 the inventor experimented with slots formed on the forward edges of aeroplane wings in an effort to neutralize the eddy currents which tend to form over the upper surfaces of the wings. The interference of these eddy currents with the air over the surface of the wings was lessened by admitting additional streams of air through slots from the undersurface. The slots thus formed tended to obviate the so-called "burbling" that occurs when the stalling angle is reached. But disadvantages were found to exist in locating slots on the forward edges of the wings and advantages in placing them in the rear of the wings. These advantages were discovered through experiments which were completed September 16, 1920. In taking off in an aeroplane an optimum arrangement is shown to be a combination of a high lift with a low drag, and in landing, a combination of a high lift with a high drag. The slotted trailing edge flap of the patent in suit affords these advantages that were discovered through experiments which culminated on September 16, 1920. This discovery doubtless involved a true inventive step over the earlier slot installations but it appears to have been disclosed by the inventor in U. S. Patent No. 1,394,343. This patent was applied for on April 27, 1921 and issued on October 18, 1921, more than two months before the filing of the application for the patent in suit on December 31, 1921. While it illustrates and specially describes only flaps and slots which are

forward of the wings the specification states that: "It will be obvious that such auxiliary wings may be located in front or at the rear of the main wing."

Neither Claim 1 nor Claim 2 of U. S. Patent No. 1,394,343 limits the position of the flaps and slots to a location forward of the wings. Each claim is drawn broadly enough to cover flaps and slots in the rear of the wings and each calls for a two position flap which, when depressed, opens a slot for the introduction of an air current from the undersurface of the wings and closes the slot when the flap is in a normal position. The claims of U. S. Patent No. 1,394,343 plainly cover slot producing flaps designed to prevent "burbling" and are adapted to effect a high lift and low drag in taking off and a high lift and high drag in landing.

The charge of infringement is not directed to sales by the defendant of ailerons employed for lateral balancing but only to sales of Stinson Reliant Aeroplanes equipped with flaps which are used in landing and taking off. It seems clear that if the claims be limited to a three position wing flap the defendant does not infringe for the charge of infringement is restricted to flaps and slots such as are used for taking off and landing and such flaps when turned to an upward position not only will not serve to fulfil their function but the defendant's flaps, which are used for landing and taking off, are so constructed that they cannot be turned upward. If, on the other hand, the claims be construed, as they were in the court below, so as to cover a two position trailing edge flap that opens a slot when depressed and closes it when in a normal position, they must be regarded as invalid in view of U. S. Patent No. 1,394,343, for that patent discloses such a two position trailing flap as the defendant uses. In other words, Claims 1, 2 and 4 of the patent in suit if applied to a two position trailing flap would not be a distinct invention or improvement over the earlier patent but for substantially the same device. Consequently they are invalid over Patent No. 1,394,343 for double patenting. Miller v. Eagle Mfg. Co., 151 U.S. 186, 198, 14 S.Ct. 310, 38 L.Ed. 121; National Electric Ticket Register Co. v. Automatic Ticket R. Corp., 2 Cir., 15 F.2d 257, 258; Hubbell, Inc., v. General Electric Co., 2 Cir., 267 F. 564, 568, and also for lack of invention. The earlier patent was pleaded in the answer as a bar

to the suit and cannot be disregarded as a defense even if the exact theory which we deem pertinent was not set forth.

In view of our conclusion as to the effect of U. S. Patent No. 1,394,343 it is unnecessary to consider whether the British Patents No. 166,426 and 166,029 granted upon applications filed more than one year before that of the patent in suit are effective to bar the complainant ˙from claiming any invention disclosed or claimed therein.

Claims 1, 2 and 4 of the patent in suit, in so far as they cover the two position structure embodied in the Stinson Reliant device, are void for double patenting and for lack of invention because of the earlier U. S. Patent No. 1,394,343, already discussed. In so far as they relate to three position flaps for use as ailerons, the defendant's structure does not infringe because the flaps that are charged to infringe are employed to increase the lift of the wings when a plane is taking off or landing, and are not and cannot be used as ailerons for maintaining lateral stability.

The interlocutory decree granted by the court below is reversed with directions to dismiss the bill of complaint.