**PLAX CORPORATION, Appellant,**

v.

**PRECISION EXTRUDERS, Inc. and
Lamex Chemical Corporation.**

**PLAX CORPORATION**

v.

**PRECISION EXTRUDERS, Inc. and
Lamex Chemical Corporation,
Appellants.**

**Nos. 11891, 11892.**

United States Court of Appeals
Third Circuit.

Argued Sept. 25, 1956.

Decided Jan. 3, 1957.

James P. Burns, Washington, D. C.,
(Wm. H. Campbell, Jr., Newark, N. J.,
Alfred C. Aurich, Philadelphia, Pa., Edward S. Irons, James P. Burns, Washington, D. C., on the brief), for plaintiff-appellant.

Asher Blum, New York City (Mock &
Blum, New York City, on the brief), for
defendants-appellees.

Before BIGGS, Chief Judge and
GOODRICH and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff, Plax Corporation, instituted suit alleging infringement by the defendant, Precision Extruders, Inc., of Ferngren United States Patent No. 2,-128, 239 ('239) and Ferngren United States Patent No. 2,230,188 ('188). Subsequent to the filing of the complaint Precision was dissolved and its successor, the other defendant, Lamex Chemical Corporation, was made a defendant. At pre-trial it was stipulated that the litigation would be limited to the adjudication of the validity and infringement of claims 8, 21 and 26 of '239, and of claim 16 of '188. The claims in issue, all process claims, are set out in the footnote.[1]

Precision filed a counterclaim for a declaratory judgment of invalidity and noninfringement of the claims in issue. The court below found the claims valid[2] but not infringed. D.C., 137 F.Supp. 495. Plax has appealed from that portion of the judgment holding the claims not infringed. The defendants have appealed that part of the judgment holding the claims valid.

The processes employed by Plax and the defendants involve the production of hollow articles from organic plastic materials. These processes have had extensive use in the production of bottles from the organic plastic known as polyethylene. This substance has the unique characteristic of flexibility which permits the production of the popular "squeeze bottle." To avoid confusion in the treatment of this complex subject matter, we will deal with the issues presented in substantially the same order as did the court below.

1. As follows:

Patent '239: "8. The process of making blown hollow articles from organic plastic materials which are expansible by blowing and thereafter capable of being rigidified, which comprises moving the plastic material while in a plastic state in tubular form into a mold of the shape of the finished article, bringing the end of the tube of plastic material into contact with the bottom of the mold to close the end of the tube, and applying fluid under pressure to the interior of the closed tube to distend the walls thereof and bring them against the walls of the mold."

"21. The process of making hollow articles from organic plastic materials which are expansible by fluid pressure and thereafter capable of being rigidified, which comprises providing a mass of such plastic material in a state of workable plasticity, performing a portion of said mass while still in a state of workable plasticity into a closed-ended hollow body, expanding said preformed material in a mold by fluid pressure before the material thereof has been converted to a state of rigidity, rigidifying the expanded material in position in the mold, and separating the hollow article thus formed from the remainder of said mass."

"26. The process of forming hollow articles from organic plastic material which is expansible by blowing and thereafter capable of being rigidified, which comprises forming an expansible plastic blank from an integral with an unformed parent body of such material, expanding the blank by blowing in a mold prior to the rigidification of the material, and severing the article thus formed from the parent body of said material, the blown article thus formed being initially rigidified in situ in the mold."

Patent '188: "16. The process of forming a blown hollow article from organic thermoplastic material which is expansible by blowing and thereafter capable of being rigidified, which comprises heating such an organic thermoplastic material to bring it to a moldable state of plasticity, passing said plastic material into an elongate annular chamber under superatmospheric pressure, extruding a predetermined quantity of the plastic material in hollow form from said annular chamber, applying gaseous pressure within said extruded plastic material while it is still in a moldable state of plasticity and thereby expanding said plastic material into conformity with the confines of the cavity of a mold, thereby forming a blown hollow article, and introducing additional heated plastic material into said chamber for subsequent extrusion."

2. It is interesting to note that claims 8, 21, and 26 of the '239 patent were found valid in Plax Corp. v. Elmer E. Mills Corp., D.C.N.D.Ill.1952, 106 F.Supp. 399, modified in part 7 Cir., 1953, 204 F.2d 302. There was no holding that claim 16 of the '188 patent was valid but the court did find that it was not infringed. See the opinion of the court below, 137 F.Supp. at page 496, and 204 F.2d 302, 311.

## Validity of Patent '239

The Ferngren '239 patent [3] discloses an extrusion blow molding process. Cold plastic granules are introduced into a hopper attached to an extruder and these flow by gravity down and into an extrusion barrel. The barrel contains a rotating screw which advances the cold plastic into a heated zone of the extruder barrel. When brought into contact with the hot walls of the extruded barrel, the plastic is compressed and softened. The softened plastic is pushed through a perforated breaker plate, through a die-holder, and then down into a tubular die containing an outside tube and a hollow inner tube through which air is blown. The plastic material is extruded downwardly through the annular chamber which is formed between the outer sleeve of the nozzle and an inner core. The extruded tube emerging from the nozzle is introduced into a mold. The end of the tube is then closed. Ferngren describes by illustration one method of closing the tube by extruding the material further against the bottom of the mold causing the plastic material to flow both outwardly and inwardly. The inward flow is encouraged by causing suction at the inner core of the nozzle to draw the material together and form a button-like closing of the tube. Then follows a further extrusion of the tube as the nozzle is withdrawn. During the withdrawal the closed end of the tube is left in contact with the bottom of the mold. Air is emitted from the inner tube into the plastic tube causing the latter to expand and meet the confines of the mold containing it. The pressure is retained inside the mold until the plastic cools and rigidifies. The supplying nozzle is severed from the distended article. The top members of the mold are raised, the middle split member is opened and the article falls into a receptacle whence it is removed by an operator.

In support of their position that the '239 patent is invalid Precision and Lamex make a number of arguments which can be disposed of briefly. The defendants endeavored to show by an open-court demonstration that Ferngren's '239 process was inoperative. But the court below correctly found this demonstration inconclusive. Employing the defendants' machine, the defendants' own expert witness, Temple, testified that he did not consider the '239 process inoperative. The issue was whether the end of a tube produced at the end of an extruder nozzle could be closed and then be blown into a mold. The witness said that it could and there is no reason to doubt the accuracy of his statement.

Precision and Lamex also asserted that the screw extruder process was old and that prior art processes relating to celluloid and glass were substantially identical to the patented process. The fact is, however, as the court below found, that the working of celluloid and glass is sufficiently different from the Ferngren process as to render that art irrelevant.

As to an asserted lack of commercial use there was ample evidence from which the court below could find that Plax successfully used the process disclosed by the patent for commercial ends.

On examination of the entire record we conclude as did the court below, that the Ferngren '239 process satisfies the standard of invention required by Section 103 of the Patent Act of 1952, 35 U.S.C.A. § 103. We enunciated our interpretation of Section 103 in R. M. Palmer Co. v. Luden, Inc., 3 Cir., 1956, 236 F.2d 496, and of recent date in Newburgh Moire Co., Inc., v. Superior Moire Co., Inc., 3 Cir., 1956, 237 F.2d 283. We need not repeat in detail here what was said there. It is not necessary that an invention result from a "flash of genius". We think that Ferngren's work involved "more ingenuity * * * than the work of a mechanic skilled in the art", Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 90, 62 S.Ct. 37,

---

3. The '239 patent was granted on August 30, 1938 on an application filed February 25, 1933, and has now expired. The alleged infringement, however, antedates the expiration date as appears.

40, 86 L.Ed. 58, and we conclude that his processes could not be deduced from the prior art by one having "merely the skill of the calling".

### Infringement of '239 Patent

The court below held that the test of infringement of a process patent is "whether defendant's machine employs every essential of the patented method." This is a valid refinement of the test this court prescribed in Moore Filter Co. v. Tonopah-Belmont Development Co., 3 Cir., 1912, 201 F. 532, 541–542. In the defendants' process, the end of the extruded plastic tube, emanating from the stationary nozzle, is closed by bringing together the halves of a split mold, thereby pinching and sealing the end of the tube.[4] The court below found that the Precision and Lamex did not infringe the '239 process because, "One of the 'essentials' of the plaintiff's process is the use of the bottom of the mold as an integral part of the step for closing the end of the tube." This essential step, expressly set out in claim 8, was found by the court below to be contained by implication in claims 21 and 26 by the application of the rule of interpretation "that a patentee's broadest claim can be no broader than his actual invention, no matter how it may be expressed or what other claims his patent may contain." See the opinion of the court below, 137 F.Supp. at pages 501, 502, and Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co., 7 Cir., 1917, 243 F. 861, 870. This is a correct statement of the law. We cannot conclude in the light of the record that the court below erred in finding that the end-against-mold closing was the kind of closing which formed an essential element of the invention.

But even if we were to cast aside the salutary rule of construction applied by the District Court and accept Plax's contention that in applying it the court made an unwarranted interpretation of the patent, Plax' case would not be advanced substantially. Plax contends that '239 discloses methods whereby the end of the extruded tube may be closed other than by extruding the end of the tube against the bottom of the closed mold in the way shown in Fig. 3. Plax cites three parts of the specification as showing these other means.[5] Plax' expert testified as to these means: "extruding plastic is caused to flow confluently, to unite at a focus at the end of the nozzle.", or "the nozzle is brought close to the bottom [wall] of the mold * * * and extrudes the plastic material against it, causing it to flow together and close the end of the tube.", or the tube is closed "by extrusion with the aid of suction from the core of the die of the inner tube and * * * such closure can be done at almost any point during the downward movement of the tube through the opening of the mold cavity.", or the inner tube may be retracted to make this "confluent movement of the extruding plastic occur more readily, with or without the action of suction * * *", or the forward end of the plastic tube may be closed in the space "above or outside the mold ring", the extruding tube being stationary in an outside position relative to the mold or moving either toward or away from it.[6]

The words of Plax' expert witness and the language of the specification cited indicate, end-against-mold closing aside, various means and points of possible closure. But assuming that all of the cited means of closure are operable, the fact remains that none of them was employed by the defendants who closed their extruded plastic tubes by pinching them between the ends of a split mold. They therefore did not infringe the '239 process.

The issue of infringement here, at least, is primarily one of law for the record enables us to examine the precise nature of both the '239 process and that employed by the defendants. See United States v. Esnault-Pelterie, 1938, 303

---

4. The nature of the defendants' process was stipulated.

5. The portions of the specification refer-red to are found at: p. 1, col. 1, lines 20–27; and p. 4, col. 1, lines 21 and 35.

6. Transcript of Record, pp. 75–77.

U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625; Kemart Corp. v. Printing Arts Research Laboratories, Inc., 9 Cir., 1953, 201 F.2d 624, 627. We conclude that the court below did not err in holding that the claims in issue of the '239 patent were not infringed.

### Validity of '188 Patent and the Issue of Double Patenting

The Ferngren '188 patent [7] states that it is a continuation in part of the '239 patent. The defendants' arguments against the validity of claim 16 of this patent are essentially the same as those leveled against the claims of the '239 patent. We need not repeat those arguments and the answers thereto again. But an issue of double patenting must be dealt with here.

 Plax' reply brief [8] declared that the '239 patent was for the basic invention and that the '188 patent was for an improvement. Plax' counsel at oral argument asserted that '239 disclosed a generic process applicable to both thermosetting plastic materials and to thermoplastic plastic materials, while claim 16 of '188 was specific to thermoplastic plastic materials only.[9] While it is true that a prior generic patent does not necessarily prevent the grant of a later specific patent, nevertheless the specific patent must contain an inventive or patentable difference in order to be valid. Miller v. Eagle Mfg. Co., 1893, 151 U.S. 186, 198, 14 S.Ct. 310 38 L.Ed. 121; Newburgh Moire Co., Inc., v. Superior Moire Co., Inc., supra; Page, Ltd. v. Leech

Aircraft, Inc., 2 Cir., 1942, 126 F.2d 267, 269; In re Abernathy, 1941, 118 F.2d 358, 28 C.C.P.A., Patents, 966.

What is the difference here which constitutes invention? The court below stated that the '188 patent "differs from the '239 patent in that Claim 16 discloses a repetitive process and the extrusion of a full charge of plastic before blowing." 137 F.Supp. at page 501. The statement is a correct reading of claim 16.[10] We cannot agree, however, that the repetitive process and the extrusion of a predetermined quantity of plastic, called for by claim 16, result in a patentable difference between the '239 patent and the '188 patent. These steps involve a difference in mechanics rather than a difference in process.[11] Plax in effect admits our conclusion by alleging that defendants' one process infringes both the '239 patent and the '188 patent. See Plax Corp. v. Elmer E. Mills Corp., 7 Cir., 1953, 204 F.2d 302, 307–308.

██ The law permits an inventor to have a monopoly on his invention for the number of years fixed by the statutes. The monopoly is so limited in the public interest. That interest may not be jeopardized by the double patenting of a single inventive process.

█ That part of the judgment of the court below holding the claims in issue of Patent '239 valid and not infringed will be affirmed. That part of the judgment holding the claim in issue of Patent '188 valid will be reversed.

7. This patent was granted January 28, 1941 on an application filed March 29, 1938. It was co-pending in the Patent office with the '239 patent.

8. The issue of double patenting was argued orally before this court, and supplemental briefs on the issue were filed by the parties.

9. Thermosetting materials are organic plastic materials which rigidify on the application of heat. Thermoplastic materials are organic plastic materials which rigidify on cooling, and become plastic on the application of heat.

10. Plax's expert noted two differences only

between the '239 and the '188 patents. Transcript of record pp. 161–167. Plaintiff's counsel on appeal added only the generic-specific difference. Transcript pp. 60–64.

11. The court in Plax Corp. v. Elmer E. Mills Corp., D.C.N.D.Ill.1952, 106 F. Supp. 399, 416 found no double patenting as to the '188 patent because claim 16 contained "elements additional" to those of claim 19 of the '239 patent. The '188 patent issues were not appealed. With all due deference to the court in that case, we must conclude that the additional elements did not amount to inventive difference.